Territorial Law Library

IN THE SUPERIOR COURT OF GUAM

GOVERNMENT OF GUAM, by and )  CIVIL CASE NO. CV 1203-04
through the ATTORNEY GENERAL )
OF GUAM, )
 )
                        Plaintiff, )  **DECISION AND ORDER**
 )
        v. )
 )
PACIFICARE HEALTH INSURANCE )
COMPANY OF MICRONESIA, INC. )
d.b.a. PACIFICARE ASIA PACIFIC )
and GUAM FEDERATION OF )
TEACHERS, )
 )
                        Defendants. )
_____ )

This case is before the Court on PacifiCare's Motion for Summary Judgment filed 6 January 2005. On 28 February 2005 the Government of Guam (hereafter GovGuam) filed its First Amended Complaint joining Guam Federation of Teachers (hereafter GFT) as a necessary party. This complaint is identical to the original complaint in all particulars except for the naming of GFT as a defendant. GFT joined in the Motion for Summary Judgment, the matter was heard on 24 March 2005 and the Court reserved decision. The motion is now granted for the reasons stated herein.

In November 2004 PacifiCare contracted to provide GFT's members with health and dental health insurance and services. A majority of GFT members are Government of Guam employees.

GovGuam contends in Count I that it has exclusive authority to negotiate group insurance for GovGuam employees pursuant to 4 GCA § 4301(a), and that the PacifiCare-GFT contract unlawfully interferes with this authority.

For fiscal year 2005 GovGuam entered into group health insurance contracts for GovGuam employees with Staywell and SelectCare, group health care providers. GovGuam contends in Count II that PacifiCare's action tortiously interferes with those contractual relations, and in Count III that

PacifiCare's action tortiously interferes with GovGuam's prospective economic advantage.

### Count I.

GovGuam seeks a declaratory judgment granting it the exclusive right to negotiate for its employees, a permanent injunction, and other relief. Plaintiff relies on 4 GCA § 4301(a) which states, "The Governor is authorized to enter contracts with one or more insurance companies, authorized to do business in Guam, for group insurance, including but not limited to hospitalization, medical care, life and accident, for all employees or separate groups of employees of the government of Guam." There is no genuine issue as to any material fact as to this count.

The government contends that because of the authority of the Governor is stated, § 4301 should not be construed to extend authority to others not named. GovGuam states, "The issue in the present case is *who* is authorized to exercise the authority granted i.e. who is authorized to enter into contracts with health insurers on behalf of separate groups of Government of Guam employees." (Opposition to PacifiCare's Motion for Summary Judgment, at 19, emphasis in original). More precisely, the issue is whether group health insurance for GovGuam employees with no government contribution comes within the reach of the statute. A question of statutory construction is thus presented.

GovGuam did not address this initial step in statutory construction. Instead, it relies at length on the maxim "expressio unius est exclusio alterius." However, "[t]he maxim is subordinate to the primary rule that the legislative intent governs the interpretation of the statute." Norman J. Singer, Statutes and Statutory Construction § 47.23, 315 (6th ed. 2000).

Gov Guam argues that since § 4301 does not include authority for any except the Governor, others are excluded citing Foxgord v. Hischemoeller, 820 F.2d 1030 (9th Cir. 1987), "Under the maxim of statutory construction, 'expressio unius est exclusio alterius,' where a statute names the parties who come within its provisions, other unnamed parties are excluded." Id. at 1035 Foxgord decided that the statute granting federal courts exclusive jurisdiction in civil cases over "consuls or vice consuls" did not include honorary consuls. The government, in effect, interprets "within its [the statutue's] provisions" in Foxgord, as applied in this case, to mean all group health insurance for GovGuam employees.

Other cases cited by GovGuam are to a similar effect. For example, in Boudette v. Barnette, 923 F.2d 754 (9th Cir. 1991) the court had before it a court rule stating a summons and complaint shall, "at the request of the party seeking service…, be served by a United States marshal or…" Id. at 756. Held, a request was required before court personnel had to serve on behalf of an *in forma pauperis* plaintiff. Id. at 757. GovGuam also cited EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd., 1998 Guam 6, which stated that a foreign bank licensing statute named the following activities for which a license was required, "buying, selling, paying or collecting bills of exchange, issuing letters of credit or receiving money for transmission by draft, check, cable or otherwise, and making loans." Id. at 5. Held, that since the securing of a loan with a mortgage on real property located on Guam was not included, no license was required for that activity. Id. at 5-6. GovGuam cited a second Guam case, Rinehart v. Rinehart, 2000 Guam 14, in which the trial court had allowed testimony by telephone. 6 GCA § 7301 provided, that "[t]he testimony of a witness may be taken by affidavit, by deposition or by oral examination." Held, that since the statute did not provide for

telephonic testimony, it was error to admit such at trial over objection. Id. ¶ 8.

These cases have little application if § 4301 does not reach or involve group health contracts for separate groups of GovGuam employees receiving no government contribution.

GovGuam also cites the Federal Employee Health Benefits Act, 5 US.C. § 8902, and cases under that Act for the proposition that the authority is exclusive. Provisions in this Act are similar to those found in 4 GCA § 4301, in that the Act involves government-contributed health insurance.

Again, these authorities only apply if § 4301 reached all group health insurance policies for GovGuam employees, and GovGuam contributed to the cost of the PacifiCare-GFT insurance coverage. It contributes nothing. Thus there is no permissible analogy between a contract in which the government plays no part, and those in which it contributes significantly to the premium owed by the insured government employee as required by § 4301(b)

PacifiCare cites the maxim in support of its own position,

"When what is expressed in a statute is creative, and not in a proceeding according to the common law, it is exclusive, and the power exists only to the extent plainly granted. Where a statute creates and regulates, and prescribed the mode and name of the parties granted right to invoke its provisions, that mode must be followed and none other, and such parties only may act." (Quotation from Singer, supra, § 47.23, 307-13).

In accordance with this authority the Governor's authority to enter government-contributed contracts for group health insurance is exclusive.

GovGuam's contention for exclusivity is also undermined by another provision in § 4301(b) that "[a]ll participation by employees in such contracts of insurance shall be on a voluntary basis." Thus employees are not required to enroll in any contract authorized by the Governor and which is, in part, government-funded. This provision does not support an implication of exclusivity, for to

do so would mean that GovGuam employee groups may not obtain coverage elsewhere if they voluntarily opt out of a § 4301 policy.

PacifiCare contends that the plain language of the statute indicates that it concerns only government-contribution health insurance plans. As PacifiCare states, the most reliable evidence of legislative intent is the actual language of the statute. Section 4301(a) is quoted above. Section 4301(b) states:

> (b) All participation by employees in such contracts of insurance shall be on a voluntary basis. Effective in the next contract following the enactment of this subparagraph, the government's contribution for health and dental insurance shall be uniform within each class (including separate classes and rates for retired employees and their survivors) for all competing plans and shall not be less than fifty percent (50%) of the lowest premium for a single employee, except that the government shall increase the contributions it makes on behalf of a retired employee or survivor of a retired employee so that the retired employee or the survivor of a retired employee contributes no more than a active employee who is otherwise in the same class.

Section 4301 gives the government the opportunity to provide for government support of group health insurance for its employees. It is clear to the Court that § 4301 governs only government-contribution group health insurance contracts. That conclusion is found in the language of the statute, from which the legislative intent can be drawn. The intent is unambiguous. Section 4301 does not require the Governor's authorization for contracts in which the government does not contribute to the insured employee's premium, as in this case involving two private organizations, PacifiCare and GFT.

**Count II and III.**

These counts have the threshold requirement that the PacifiCare-GFT contract interfered with the contracts between GovGuam and SelectCare and GovGuam and StayWell. To establish that no

genuine issue existed as to any material fact, PacifiCare relied upon the testimony of the Department of Administration Employee Benefits Branch Supervisor. This witness testified that the PacifiCare-GFT contract did not interfere with any of the terms of the contracts between GovGuam and StayWell or between GovGuam and SelectCare.

In opposition to this testimony GovGuam relies solely on letters written to the Director of the Department of Administration from StayWell and SelectCare to show that genuine issues of fact exist. The Plan Administrator of SelectCare wrote two letters. The first is dated November 17, 2004 and states in part, "We are concerned with this action as it will potentially affect our plans and significantly change the risk pool of the Government of Guam." The second, dated November 22, states in part, "As previously expressed, we are extremely concerned with this action as it will adversely affect our plans and significantly change the risk pool of GovGuam.... Unless something is done about this matter, we may have no other option but to completely cease our business with GovGuam."

The letter of the Associate Administrator of StayWell, dated November 19, 2004 states in part, "...StayWell believes that the proposal from Mr. Rector [president of GFT] would be in violation of the statutes which regulate the method by which the government of Guam obtains health insurance and, in addition, will cause the government to be in breach of its contract with StayWell.

"If the Government favorably acts upon GFT's proposal, the only sure result will be extensive litigation.... At the very least, it will be necessary to renegotiate rates and benefits for this fiscal year if a new insurer is allowed into the market."

PacifiCare objects to a consideration of these letters on the ground of hearsay. The Plaintiff contends that they are excited utterances admissible under that exception to the hearsay rule. The exception states, "Excited utterance. A statement relating to a startling event or condition made while declarant was under the stress of excitement caused by the event or condition." 6 GCA 803(2).

After considering the arguments of the parties on this issue the Court concludes that the letters are inadmissible, and thus do not provide "facts as would be admissible in evidence" in opposition to the motion for summary judgment. Guam R. Civ. P. 56(e). GovGuam has submitted nothing to oppose the testimony of non-interference by the GovGuam supervisor-witness.

This case concerns the alleged wrong to the Plaintiff; any wrongs alleged to be suffered by StayWell and SelectCare are not before the Court. It is the effect of the PacifiCare-GFT contract on GovGuam that is considered, not any effect on others not parties.

GovGuam contends that the defendants failed to show that the PacifiCare-GFT contract did not make GovGuam's contracts with SelectCare and StayWell more costly or burdensome.

That the actor may have caused another's contract to be more costly or burdensome means that the actor interfered with that contract. In other words, rendering a contract more costly or burdensome is one way in which interference may occur. It is not a separate injury. "[I]nterference which makes enjoyment of a contract more expensive or burdensome may be actionable..." PG&E v. Bear Stearns & Co. 50 Cal.3d 1138, 1127, 270 Cal. Rptr. 1, 4, 791P.2d 587 (1990). Thus the testimony of non-interference embraces interference that might make GovGuam's contracts more costly or burdensome.

Government of Guam v. Pacificare, et al. SP 1203-04
Page 8

The Court finds that no genuine issue as to any material fact exists and that the Defendants are entitled to a judgment as a matter of law. The Motion for Summary Judgment is according granted. Let judgment be entered accordingly.

Defendant GFT filed its Motion to Dismiss on March 13, 2005. It appears to the Court that this Decision and Order renders that matter moot.

So ordered this the 4th day of May, 2005

_Richard H. Benson_
**RICHARD H. BENSON**
**Judge, Pro Tempore**
**Superior Court of Guam**

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam.

MAY 0 2005

Galo L. Perez, Jr.
Deputy Clerk, Superior Court of Guam